## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GORDIAN NDUBIZU, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 07-3068 |
| | : | |
| DREXEL UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | |

February _23_ , 2011                                                                                     Anita B. Brody, J.

### MEMORANDUM

### I. Introduction

Plaintiff Gordian Ndubizu ("Plaintiff" or "Ndubizu") brings suit against Defendants Drexel University ("Drexel"), George Tsetsekos ("Tsetsekos"), and David Campbell ("Campbell") (collectively "Defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (Count I); the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq.* ("PHRA") (Count II); 42 U.S.C § 1981 (Count III); and common law promissory estoppel (Count IV) and fraud (Count V).[1] Defendants have filed a Motion for Partial Summary Judgment. For the reasons set forth below, I will grant in part and deny in part that Motion.

### II. Background[2]

---

[1] Jurisdiction over Counts I and III of the Second Amended Complaint is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over Counts II, IV, and V is proper pursuant to 28 U.S.C. § 1367.

[2] On a motion for summary judgment, the facts are interpreted in the light most favorable to the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Most facts are taken from Plaintiff's statements of the case as well as undisputed affidavits, deposition testimony, and other record exhibits. Some facts are, however, taken from Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment when unchallenged.

1

At Drexel University's LeBow College of Business ("LeBow"), there are four levels of professor: Assistant, Associate, Full, and Endowed. Mem. Law Supp. Mot. Summ. J. 5.

In 1987, Defendant Drexel University hired Plaintiff Gordian Ndubizu as an Assistant Professor of Accounting. Second Am. Compl. ¶ 9; Resp. 5. Plaintiff is African American, black, and born in Nigeria. Resp. 9. In 1996, Defendant promoted Plaintiff to Full Professor. Second Am. Compl. ¶ 12. In 2001, George Tsetsekos became Dean. Mem. Law Supp. Mot. Summ. J. 4; Tsetsekos Decl. ¶ 1.

Currently, there are eleven filled and twelve total endowed professorships at LeBow. Mem. Law Supp. Mot. Summ. J. 1-2. Of the eleven filled endowed professorships, seven were filled before Dean Tsetsekos's arrival in 2001. *Id.* at 6. Dean Tsetsekos instituted a reappointment review process in 2004 for these professors. *Id.* at 8-9. Dean Tsetsekos then filled the four other chairs: Ralph Walkling was named Stratakis Professor of Corporate Governance in July of 2005; Constantinos Syropoulos was named Trustee Professor in International Economics in September of 2005; John Schaubroeck was named Trustee Professor in Leadership in September of 2005; and Hsihui Chang was named KPMG Professor of Accounting in July of 2007. *Id.* at 6-7. There is also a Clarkson Professorship in Accounting which has been vacant since 2002. Resp. 34.

Plaintiff avers that Defendant Tsetsekos promised to appoint him to an endowed professorship. *Id.* at 58. More specifically, Plaintiff states that, beginning in 2002, he had conversations with Defendant Tsetsekos in which Tsetsekos promised him that after two years as a Distinguished Research Fellow, Tsetsekos would appoint Plaintiff to an endowed professorship. *Id.* Plaintiff has further claimed that, relying on this promise, he:

- Published articles and engaged in scholarly activities at a voracious pace, *id*. at 65;
- Increased his scholarly production, writing a steady stream of top-flight articles, *id*. at 66;
- Intensified, concentrated his entire life on generating high-powered research in top-tier journals, *id.*;
- Did extraordinarily more work than he had ever done or will ever do, *id.* at 66-67;
- Worked extraordinary long overtime with no immediate remuneration, *id.* at 69;
- Lost precious time with his family, *id.*;
- Impaired his health, *id.*;
- Went with very little sleep for long periods of time, *id.* at 76;
- Suffered constant stress which resulted in increased medication and hypertension, *id.*;
- Refrained from applying for other chaired professorships at other universities, *id.* at 68;
- Did not encourage inquiries as to whether he was interested in changing positions or looking for other employment, *id.*; and
- Sent a resume to Temple University but did not pursue it, *id.*

In 2007, having never been named to an endowed professorship, Plaintiff brought the instant suit against Defendants.

**III. Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997). A fact is "material" if the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating that there are no material facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot rely upon "bare assertions, conclusory allegations or suspicions" to support its

3

claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The threshold inquiry at the summary judgment stage involves determining whether there is the need for a trial, that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### IV. Discussion

I will grant Defendants' Motion for Partial Summary Judgment as to Plaintiff's Title VII, PHRA, and 42 U.S.C. § 1981 claims. I will also grant Defendants' Motion as to Plaintiff's promissory estoppel and fraud claims to the extent these claims are based on Plaintiff's increased scholarly activities. However, I will deny Defendants' Motion as to Plaintiff's promissory estoppel and fraud claims to the extent these claims are based on Plaintiff's forbearance of other employment opportunities.

#### A. Title VII, PHRA, and 42 U.S.C. § 1981 Claims

In Plaintiff's Second Amended Complaint, he alleges primarily that Defendants have discriminated against him because of his race, color, and national origin in refusing to promote and appoint him to an endowed professorship, in violation of Title VII, the PHRA, and 42 U.S.C. § 1981. Second Am. Compl. ¶¶ 39, 59-60, 68. Defendants have moved for partial summary judgment, arguing that Plaintiff has not met his *prima facie* burden for his failure to promote claims as to ten of the twelve endowed professorships at LeBow. To elaborate, seven endowed

4

professorships were filled before Tsetsekos's arrival. Three endowed professorships were filled after Tsetsekos's arrival, but in fields other than accounting. One endowed professorship was filled after Tsetsekos's arrival in the field of accounting. The final endowed professorship remains vacant and is in the field of accounting. Defendants seek to strike all of Plaintiff's claims except for the last two, those pertaining to endowed professorships available after Tsetsekos's arrival in the field of accounting.

Plaintiff has responded that his claims do *not* include challenges to the selections of all of the endowed chairs at LeBow or allegations that he should have been appointed to each and every endowed chair position at Drexel. Resp. 36. Plaintiff affirmatively states that he "is not making 'claims'" as to the non-accounting positions. *Id.* at 13.[3] Rather, he is seeking to introduce evidence "as to the appointment of professors to endowed professorships outside the Accounting field and Defendant Tsetsekos' [sic] reappointment of several endowed professors in 2004." *Id.* at 15. Thus Plaintiff and Defendants are in fact in agreement as to the nature of Plaintiff's *claims*, and Defendants' Motion on this point will be granted. Defendants may file motions in limine regarding Plaintiff's introduction of *evidence* as to the non-accounting endowed professorships.

### B. Promissory Estoppel Claims

---

[3] In context, Plaintiff argues:
> The first three requests Defendants make to dismiss "claims" made by Gordian Ndubizu as to chaired professorships held by Walkling, Syropoulos, Schaubroeck, and Defendant Tsetsekos' [sic] reappointment of other chaired professorships are misplaced. This is not a Motion for Summary Judgment as Defendants are not asking the court to dismiss individual counts in the complaint, and, instead, is a Motion in Limine as to whether certain evidence should be excluded at trial. However, this Court has already ruled in discovery Motions Dr. Ndubizu has filed that information as to other chaired professors, including those appointed by Defendant Tsetsekos or reappointed by him, are relevant to Dr. Ndubizu's allegations in his complaint that he is qualified to be a chaired professor and that he is more qualified than others whom the university or Defendant Tsetsekos has appointed or reappointed to chaired professorships. *Dr. Ndubizu is not making "claims," whatever Defendants mean by that term, as to these positions.* Dr. Ndubizu is using these examples to show how Defendant Tsetsekos treats Dr. Ndubizu differently and less favorably than those who are not African-American or born in an African country.

Resp. 12-13 (emphasis added).

Plaintiff has also alleged in his Second Amended Complaint that Defendant Tsetsekos promised Plaintiff an endowed professorship, that Plaintiff detrimentally relied on this promise, and that injustice can only be avoided by enforcing the promise. More specifically, Plaintiff has stated that he worked harder and did not apply for other positions at other universities in reliance upon Defendant Tsetsekos's promise. Defendants have moved for summary judgment on Plaintiff's promissory estoppel claim, arguing that Plaintiff's alleged detrimental reliance does not in fact constitute detrimental reliance under the law, that merely continuing to work and neglecting to seek other job opportunities is legally insufficient for promissory estoppel purposes.

Pennsylvania has adopted § 90 of the Restatement (Second) of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets*, 636 A.2d 156, 160 (Pa. 1994) (quoting Restatement (Second) of Contracts § 90 (1981)). Pennsylvania courts have more specifically held that:

> In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000); *see also Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (same). The second prong of this analysis is often referred to as "detrimental reliance." *See, e.g.*, *Tomlinson v. Checkpoint Sys.*, No. 06-2205, 2008 U.S. Dist. LEXIS 5463, at *20 (E.D. Pa. Jan. 23, 2008) (citing *Pane v. RCA Corp.*, 868 F.2d 631, 638 (3d

Cir. 1989)). "A party asserting a claim of estoppel has the burden of establishing all the essential elements." *Thatcher's*, 636 A.2d at 160.

### 1. Scholarly Activities

Plaintiff's contention that he increased his scholarly productivity in reliance on Dean Tsetsekos's promise fails to clear the bar for promissory estoppel, and I will grant summary judgment in favor of Defendants on this aspect of Plaintiff's promissory estoppel claim.

As indicated above, any action taken in reliance on a promise must be detrimental before a plaintiff can prevail on a promissory estoppel claim. Under the facts at hand, any increase in work was not to Plaintiff's detriment. Plaintiff has stated that he published articles and engaged in scholarly activities at a voracious pace, Resp. 65; increased his production, writing a steady stream of top-flight articles, *id.* at 66; intensified, concentrated his entire life on generating high-powered research in top-tier journals, *id.*; did extraordinarily more work than he had ever done or will ever do; *id.* at 66-67; and worked extraordinary long overtime with no immediate remuneration; *id.* at 69. However, any detriment caused by these actions is not apparent. Rather, Plaintiff has introduced evidence revealing the extent to which he benefited from his efforts and publications; numerous professors congratulated him on his accomplishments and commented on his increased prestige. *See* Ndubizu Decl. ¶¶ 13-17. Thus, by publishing additional articles, Plaintiff boosted his personal reputation, and increased his chances of being named to a chaired professorship at LeBow or elsewhere. This was not to his detriment, and as a result, Plaintiff's promissory estoppel claim cannot proceed on this basis.[4]

---

[4] In his Response to Defendants' Motion, Plaintiff occasionally alludes to other acts of detrimental reliance related to his increased scholarly activity. However, these arguments are not fully developed and are similarly inadequate. Plaintiff suggests that additional publications were to his detriment because he could have spent more time

### 2.   Other Employment Opportunities

However, Plaintiff's contention that he declined to pursue other employment opportunities in reliance on Dean Tsetsekos's promise does survive Defendants' Motion for Summary Judgment.

As presented above, detrimental reliance can arise from action or forbearance. Forbearance from other employment opportunities can thus constitute detrimental reliance in certain situations. *Cf. Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003); *Langer v. Superior Steel Corp.*, 161 A. 571, 584-85 (Pa. Super. Ct. 1932) (cited with approval by *Fried v. Fisher*, 196 A. 39, 42 (Pa. 1940)). However, there are indications in the case law that detrimental reliance requires more than mere refusal to seek other employment prospects, and that some evidence that other employment opportunities would have been available to the promisee is necessary to survive a motion for summary judgment. *See, e.g.*, *Ankerstjerne v. Schlumberger,*

---

"attending to the foundation that bears his name and helps widows and orphans in Nigeria." Resp. 66. Elsewhere Plaintiff claims that he lost "precious time with his family and impair[ed] his health." *Id.* at 69; *see also id.* at 76. Plaintiff also argues that he worked extraordinary hours, sometimes even through the night. *Id.* at 69. Plaintiff twice suggests that he could have "slacked off." *Id.* at 66. Plaintiff's Response cites his wife's deposition at length as revealing "the emotional and physical toll that Defendant Tsetsekos [sic] broken promises have inflicted upon her husband":
> Ms. Ndubizu explains the extraordinary hours that her husband worked in reliance on Defendant Tsetsekos' [sic] promises and the physical and emotional toll that it took on her husband, including loss of family time with herself and their children, going with very little sleep for long periods of time, and the constant stress which resulted in increased medication and hypertension.

*Id.* at 76. However, none of the foregoing claims are substantiated or adequately connected to Tsetsekos's promise in the depositions cited. Regarding the Ndubizu foundation, Ms. Ndubizu merely mentions it as an activity of her husband's in her deposition, and does not give any indication that he spent less time on the foundation's activities in detrimental reliance on Tsetsekos's named professorship promise. *See* Florence Ndubizu Dep. 16:22-18:15. Ms. Ndubizu also stated broadly that her husband does not sleep, *id* at 13:13, and noted that he takes blood pressure medication, *id* at 15:8, but that she could not remember when he started, *id.* at 15:14. When asked if she saw stress on her husband prior to the filing of the lawsuit, Ms. Ndubizu responded "no." *Id.* at 27:11-17.[4] There is no attempt to quantify time spent away from the family or hours of sleep lost, and no introduction of medical records documenting health problems and indicating their causes. In sum, Plaintiff has not met his burden for surviving summary judgment on his promissory estoppel claim that he intensified his research efforts at the expense of his family and his health.

*Ltd.*, 155 F. App'x 48, 51-52 (3d Cir. 2005) (finding a lack of detrimental reliance where there was no evidence that the plaintiff had had to forego other, more lucrative opportunities).

The relevant evidence in this case is as follows. In his deposition, Plaintiff averred, "[P]eople will tell me that they are looking if I want a department head or I want a—you know, there's a named professor here or there. And I tell them that the dean have [sic] made a promise to me. So, I'm not even considering that." Ndubizu Dep. 108:23-109:4. Ndubizu stated further that "people talk to me about positions. And my—if I'm interested, if I'm looking. And generally I tell them that, Look, the dean have [sic] promised me a named professor and there's no point for me to be thinking of moving . . . ." *Id.* at 121:22-122:3.

Plaintiff further substantiated these indications of detrimental reliance in a subsequent declaration, wherein he wrote:

> Over the years several other schools have sought my interest in possible senior positions including named or endowed professorships. These include the University of South Florida, the University of North Texas, the University of Delaware, Binghamton University, and Massey University. . . . I repeated [sic] defected these inquiries since Defendant Tsetesko [sic] had promised me a named/endowed professorship.

Ndubizu Decl. ¶¶ 3-4. Plaintiff also attached to his declaration two emails from Massey University.[5]

This evidence is sufficient at this juncture, for purposes of surviving a motion for summary judgment. Taken together, the evidence appears to represent slightly more than mere

---

[5] Plaintiff has also averred that Pace University "offered a named professor position" to him, namely "the Ernst and Young named professorship." Ndubizu Decl. ¶ 2. Plaintiff accepted a visiting professorship with the intention of deciding at the end of two years whether he wanted to remain permanently. *Id.* He was granted a leave of absence from Drexel for the first year, but not the second, and therefore returned to Drexel without being able to pursue the Pace opportunity. *Id.* Plaintiff also declared that Saint Louis University approached him about his interest in an endowed professorship. *Id.* ¶ 1. Both the Pace University and the Saint Louis University interactions took place before Tsetsekos's deanship but could be seen as indicative of the possibility that Plaintiff could have obtained employment elsewhere had he not relied on Tsetsekos's promises and remained at Drexel. *See id.* ¶ 1; Florence Ndubizu Dep. 25:14-15.

failure to apply for other jobs; Plaintiff has provided at least some indication that other employment opportunities may have been available to him. I will therefore deny Defendants' Motion as to this component of Plaintiff's promissory estoppel claim and allow Plaintiff to introduce evidence as to his alleged detrimental reliance by forbearance to a jury.[6]

### C. Fraud Claims

Finally, in his Second Amended Complaint, Plaintiff alleges fraud. Defendants have moved for summary judgment on Plaintiff's fraud claim on the grounds that "it suffers from the very same deficiencies as Plaintiff's promissory estoppel claim—the complete absence of any detrimental reliance." Mem. Law Supp. Mot. Summ. J. 48.

> Under Pennsylvania law, common law fraud requires proof of six elements:
>
> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Thus, fraud does indeed also require proof of detrimental reliance. *See also Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) ("The successful maintenance of a cause of action for fraud includes, inter alia, a showing that the plaintiff acted in reliance on the defendant's misrepresentations."); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 157 (Pa. Super. Ct. 2002) ("In order to prove . . . common-law fraud . . . , the plaintiffs

---

[6] Defendants also argue in their Motion that because there was a contract governing Plaintiff's scholarly activities, Plaintiff cannot pursue a promissory estoppel claim stemming from those same scholarly activities. I need not address this argument. I have already granted Defendants' Motion with regard to Plaintiff's scholarly activities on other grounds, and Defendants do not pursue this argument with regard to Plaintiff's failure to pursue other employment opportunities. Furthermore, previously in this case, Judge Strawbridge has written that Plaintiff's assertion that he decided not to pursue employment at another university in reliance on Drexel's promise to provide him a chaired professorship was sufficient for purposes of amending the complaint to add a promissory estoppel claim, because the employment contract, "while obligating 'Plaintiff to teach, research, write and publish,' does not . . . prevent him from pursuing a professorship at another university." *See Ndubizu v. Drexel Univ., et al.*, No. 07-3068, 2009 U.S. Dist. LEXIS 99966, at *11 (E.D. Pa. Oct. 26, 2009).

must show that they suffered harm as a result of detrimental reliance . . . ."); *Prime Meats v. Yochim*, 619 A.2d 769, 774 n.6 (Pa. Super. Ct. 1993) ("[C]ommon law fraud requires proof of detrimental reliance.").

In this case, for the reasons stated above, Plaintiff has failed to demonstrate detrimental reliance with regards to his scholarly efforts subsequent to Dean Tsetsekos's alleged promise or misrepresentation. Just as this failure to prove detrimental reliance was fatal to part of Plaintiff's promissory estoppel claim, so too is this failure to prove detrimental reliance fatal to part of Plaintiff's fraud claim. Conversely, for the reasons stated above, Plaintiff has produced evidence sufficient for the purposes of summary judgment and to reach a jury on the question of detrimental reliance stemming from his forbearance of other employment opportunities. Thus, Plaintiff may pursue his fraud claim to the extent that it alleges detrimental reliance in the form of foregone employment opportunities, but not to the extent that it alleges detrimental reliance in the form of increased scholarly activity. As with Plaintiff's promissory estoppel claim, I grant in part and deny in part Defendants' Motion as to Plaintiff's fraud claim.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is granted in part and denied in part as set forth above.

s/Anita B. Brody

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: