IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDIAN NDUBIZU, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 07-3068 |
| DREXEL UNIVERSITY, et al., | : |
| Defendants. | : |

## ORDER

Tenured Accounting Professor Gordian Ndubizu ("Ndubizu") filed this action against his employer, Drexel University; the Dean of Lebow School of Business, George Tsetsekos ("Tsetsekos"); and Chair of the Accounting Department, David Campbell (collectively, "Defendants"). Ndubizu alleged that Defendants broke a promise to give Ndubizu an endowed chair and that Defendants discriminated against Ndubizu on account of his race (African American), color (black), and national origin (Nigerian). The parties have vigorously battled at every stage of litigation. Discovery was extended multiple times due to expansions of the complaint and heated discovery disputes requiring frequent court involvement. From March 14 to April 5, 2011, Ndubizu finally presented his case to a jury. On March 28, 2011, I granted judgment as a matter of law for Defendants on two common law claims. On April 5, 2011, the jury found in favor of Defendants on all remaining claims.

Ndubizu now moves for a new trial on all claims. ECF No. 184. I will deny the motion. As the motion challenges almost every decision adverse to Ndubizu since and including the

summary judgment orders, I will not discuss every decision again here.  The brief explanation that follows responds paragraph by paragraph to the issues raised in the motion by pointing to a previous explanation in the record[1] or substantively responding where I have not already explained my decision.

***

Paragraph 12:[2] My summary judgment ruling is explained at ECF Nos. 111 and 114.

Paragraphs 13-14: Before trial, Defendants moved in limine to preclude evidence that Tsetsekos had broken promises to other faculty members.  ECF No. 116.  Ndubizu opposed and sought to introduce the following: (1) testimony by the current associate dean that Tsetsekos had once promised to fund four Center for Teaching Excellence fellows but later declined to do so, Pl.'s Resp. 2, ECF No. 123; (2) testimony by a former associate dean that Tsetsekos would assure the associate dean that "he would do things and told me later that he wouldn't", *id.* at 3; (3) testimony by a professor at another university that Tsetsekos had once orally offered the professor a five-year position but then sent a written contract with "terms not previously discussed, in particular a provision that he could fire me as department head at any time without cause," *id.* at 4; and (4) testimony from a former provost that Tsetsekos had pledged to attend conflict resolution seminars yet never did, *id.* at 5.

---

[1] Most decisions have been explained and revisited many times in the record and the citations in this order do not catalogue every discussion of every issue.  Also, while this order cites to previous arguments occasionally, it does not list all of counsel's previous arguments; Ndubizu's counsel often made arguments on a given topic multiple times a day over multiple days, and without regard to whether the issue had already been ruled on.

[2] The paragraph numbers refer to the numbered paragraphs in Ndubizu's Motion for a New Trial at ECF No. 184.

Both parties orally argued the motion to me during the second day of the Final Pretrial Conference. Final Pretrial Conf. Tr. 42:14-47:25, Mar. 7, 2011 [hereinafter "FPTC II Tr."]. Defendants argued that Ndubizu "intends to smear Tsetsekos by introducing evidence" of conduct completely unrelated to the case and that it was inadmissible character evidence. *Id.* at 42:18-23. Ndubizu responded that he wanted to show that there are other people who will say that Tsetsekos is someone who makes promises and then breaks them. *Id.* at 43:3-15. In response to this proffer, I remarked that the evidence was inadmissible under Federal Rule of Evidence 404. *Id.* at 43:16-21. Ndubizu replied that he sought to admit the evidence pursuant to Rule 405, not Rule 404, *id.* at 43:22-44:22, that Tsetsekos's character is an element of the claims of promissory estoppel and fraud, *id.* 45:4-8, and that the evidence showed that lying to faculty was Tsetsekos's "mode of operation," *id.* at 46:25-47:3. *See also* Pl.'s Resp. 5-7. I reserved decision at the conference to review Ndubizu's response brief and later issued an order at ECF No. 128 granting the motion in limine.

In his response brief and at the conference, Ndubizu misunderstood the relationship between Rules 404 and 405. Rule 404 governs the admissibility of character evidence while Rule 405 addresses the allowable methods of proving character after it has been determined that character evidence is admissible. *See* Comment to Fed. R. Ev. 405, 1972 Proposed Rules ("The rule deals only with allowable methods of proving character, not with the admissibility of character evidence, which is covered in Rule 404."). A party seeking to admit character evidence must first show that it is admissible pursuant to an exception in Rule 404. The clause upon which Ndubizu relied in Rule 405, "[i]n all cases in which evidence of character or a trait of character of a person is admissible," is not an additional substantive exception to the general

3

inadmissibility of character evidence. Rather, it is a limiting introductory clause, alluding to the preceding rule's general prohibition of character evidence.

Upon examining the evidence under the correct rule to evaluate its admissibility, I found the evidence inadmissible. Ndubizu intended to introduce the excluded evidence for the very proposition that Rule 404 forbids: "to prove the character of a person in order to show action in conformity therewith." *See* Pl.'s Resp. 5-7 (arguing that the evidence shows "Defendant Tsetsekos has a mode of operation of making promises and commitments and then refusing to abide by the promises/commitments/contracts he has made" and that it "paints a picture of Dean Tsetsekos as a man is [sic] not trustworthy and who is comfortable making and then breaking promises and commitments"). The examples of other lies or broken promises were completely unrelated to the broken promise that Ndubizu alleged in this action, i.e. to appoint Ndubizu to an endowed chair, and could not be used to show a continuing "plan." Fed. R. Evid. 404(b). Ndubizu's newest argument, that the evidence should have been admitted as showing a "habit of breaking promises" under Rule 406, is even more frivolous. Pl.'s Mem. Supp. Mot. New Tr. 10, ECF No. 184-2.

In sum, Ndubizu sought to present evidence that Tsetsekos has a general propensity to lie to colleagues so that the jury would infer that on a particular occasion he lied to specific colleague. The evidence was properly excluded under Rule 404.[3]

Paragraph 15: This statement mischaracterizes my ruling. Plaintiff was precluded from presenting evidence relating to Tsetsekos's friendship with and help to others who shared his

---

[3] While the order at ECF No. 128 prevented Ndubizu from soliciting evidence that would be inadmissible under Rule 404, it did not address or limit impeachment of Tsetsekos's character through Rule 608.

Greek heritage.[4]  At no time did I exclude evidence that showed Defendants preferring Greeks to African Americans or choosing a Greek person over Ndubizu.  *See* ECF No. 132, n.3 ("The evidence sheds no light on how Defendants treat African Americans or Nigerians."); Trial Tr. 70:7-21, Mar. 16, 2011 (explaining that Greek heritage of a professor whose endowed chair was not at issue would be relevant if "he got the position and . . . there was someone else who was a minority, a Black or something else" who did not).

Paragraphs 16-19: Defendants' related motion in limine is at ECF No. 122, it was discussed during the Final Pretrial Conference, FPTC II Tr. 48:10-57:23, and I invited Ndubizu to provide me with legal authorities in support of his oral opposition but he declined to do so.  My decision on the motion in limine is explained at ECF No. 132 and further explained throughout the record.

Paragraph 20: My decision to partially grant Defendants' Rule 50 motion is explained at Trial Tr. 4:3-6:11, Mar. 28, 2011.  This decision was made after oral argument at Trial Tr. 66:4-100:6, Mar. 25, 2011.

Paragraph 21-22: The limitation of Ndubizu's claims to the two accounting chairs is explained at ECF Nos. 110 and 114.[5]

---

[4] At most, the exhibits were circumstantial evidence that Tsetsekos recruited students and faculty with Greek heritage to join the Drexel community.  The evidence did not show such patronage played a role in the endowed chairs that Ndubizu seeks, nor does the evidence generally show that Tsetsekos discriminated on the basis of race in other hiring decisions because preferential treatment of those with "personal and family connections" is not illegal.  *Amini v. Oberlin College*, 440 F.3d 350, 360 (6th Cir. 2006).

[5] As previously explained, summary judgment was granted for Defendants as to the non-accounting chairs pursuant to Plaintiff's response that he was not making claims to the non-accounting chairs.  Additionally, summary judgment would have been proper because Ndubizu could not show an adverse action with regard to non-accounting chairs for which he was not

Paragraph 23: As explained fully and more precisely throughout the record, evidence of the criteria used to award endowed chairs was limited to those candidates who were similarly situated to Ndubizu—i.e., those candidates who were considered for or appointed to endowed chairs by Tsetsekos. Hank Jaenicke was appointed by a previous dean in the 1980s pursuant to a different administration's criteria for appointment.[6]

Paragraph 24: See response, *supra*, to paragraphs 21-22.

Paragraph 25: Joseph Hargadon was not qualified to testify as an expert on endowed chairs in particular, but was permitted to "testify as to research qualifications of faculty members in the department of business" as well as other subjects. Trial Tr. 122-156:5, Mar. 21, 2011. The purpose of Ndubizu's citation to Scott Jones's testimony is unclear. Jones was permitted to testify. Trial Tr. 122:19-21, Mar. 22, 2011. Indeed, Jones testified that it was his "opinion that Dr. Ndubizu was better qualified than" Syropoulos and Schaubroeck. *Id.* at 151:21-25.

Paragraph 26-28: See response, *supra*, to paragraph 23.[7]

Paragraph 29: See arguments and discussions in the related motion to limine at ECF No. 177 and response at ECF No. 125, at the second day of the final pretrial conference, throughout

---

qualified, to which he did not apply, and from which he was not rejected.

[6] Paragraph 23 mischaracterizes Defendants' evidence. I believe the record reflects that Dean Tsetsekos testified that he had strategic reasons to prefer using endowed chairs to recruit talented external candidates or, when the rare occasion arose, to retain an internal candidate who is being lured away by another university. I do not recall Defendants arguing that this position must be filled from outside of Drexel University.

[7] Paragraph 26 also misstates the scope of permissible evidence–in addition to Syropoulous, Chang, and Schaubroeck, evidence relating to Walking's appointment was also permitted. These are the four endowed chairs appointed during Tsetsekos tenure.
Paragraph 27 mischaracterizes what evidence was presented at trial. Counsel discussed Bert Rosenbloom's poor teaching evaluations at Trial Tr. 181:22-186:1, Mar. 18, 2011.

the trial, and culminating in discussions at Trial Tr. 241:16-255:5, Mar. 21, 2011, and Trial Tr. 13:11-9, Mar. 22, 2011.

Paragraphs 30-32: I warned counsel of my procedure of giving them the proposed charge during trial, holding a charging conference, and only entertaining their objections regarding the inclusion or omission of particular jury instruction at the charging conference. *E.g.*, Final Pretrial Conf. Tr. 53:7-15, Mar. 3, 2011, ECF No. 167 [hereinafter "FPTC I"]. I gave counsel a copy of my proposed jury instructions to review on March 16, 2011 at ECF No. 133. After granting Plaintiff's request for more time to review the proposed charge, I held a charging conference on March 24. Trial Tr. 239:15-272:16, Mar. 24, 2011. The objection in the instant motion was simply not raised at the charging conference.[8]

Paragraphs 33-35: The record speaks for itself.

**AND NOW,** this 5th day of July, 2011, for both the reasons above and those explained throughout the record, it is **ORDERED** that Plaintiff's Motion for a New Trial (ECF No. 184) is **DENIED**.

/s/ Anita B. Brody
_____
Anita B. Brody,     J.

COPIES VIA ECF ON   7/5/11

O:\ABB 2011\L-Z\Ndubizu v. Drexel, Motion for New Trial.wpd

---

[8] When counsel asked me to consider new objections after the charging conference, I refused. Trial Tr. 65:3-4, 65:18-20, Mar. 25, 2011. I recognized his right to appeal that refusal. *Id.* at 100:18-19 (using the old-fashioned term "exception").

Ndubizu's counsel's request to reopen the jury instructions is just one example of his refusal to allow closure on a topic. While I patiently indulged many of his belated requests to reconsider previous decisions, I simply could not indulge them all and further delay an already meandering trial.