IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

GORDIAN NDUBIZU,                           :
    Plaintiff,                            :
                       :        CIVIL ACTION
            v.                         :
                       :        NO. 07-3068
DREXEL UNIVERSITY, et al.,                 :
    Defendants.                           :

**REPORT AND RECOMMENDATION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                          November 16    , 2011

        Presently before the Court are Defendants' Motion to Compel Plaintiff to Reimburse Defendants for Expert Witness Fees and Costs Incurred for Depositions pursuant to Federal Rule of Civil Procedure 26(b)(4)(E) (Doc. No. 164) ("Defs.' Mem.") and Plaintiff's Response (Doc. No. 185) ("Pl.'s Mem.").  The matter arises out of a claim made by Defendants Drexel University, George Tsetsekos, and David Campbell ("Defendants") for reimbursement of $46,043.34 for the costs associated with Plaintiff's depositions of four expert witnesses retained by Defendants. (Defs.' Mem.)  Plaintiff opposes the motion on the grounds that compelling payment would result in manifest injustice and that the experts' fees are unreasonable.  (Pl.'s Mem.)

        On March 29, 2010, Defendants provided Plaintiff Gordian Ndubizu ("Plaintiff") with reports prepared by the four expert witnesses.  Over the next nine months, Plaintiff deposed each of these experts.  Each expert submitted billings for his time and expenses, which the Defendants paid. The parties did not discuss who would bear these costs.

1

The underlying matter was tried before Judge Brody, and on April 6, 2011, she entered judgment in favor of Defendants based upon the jury's verdict.  (Doc. No. 162.)  On April 20, 2011 Defendants filed this Motion (Doc. No. 164) and, on May 18, 2011, Plaintiff filed his opposition. (Doc. No. 185.)  On August 11, 2011, Judge Brody referred these motions to us.  (Doc. No. 191.) We held oral argument on October 13, 2011.  For the reasons that follow, we recommend that Defendants' Motion be **GRANTED in part** and **DENIED in part**.

## I. LEGAL STANDARD

### A. Expert Discovery Costs under Federal Rule 26

Expert discovery costs are recoverable under Federal Rule of Civil Procedure 26(b)(4)(E), which provides that, "unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)."[1]  The purpose of this rule is both "to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free from cost."  *Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D. 1988).

The mandatory language of this rule is tempered in two ways.  First, a court should not order payment of expert fees if manifest injustice would result.  Fed. R. Civ. P. 26(b)(4)(E).  Second, a court is required to compel payment of only "a reasonable fee."  *Id*.  The moving party—the one who seeks reimbursement—bears the burden of showing that the requested fees and expenses are

---

[1] Because Rule 26 does not distinguish between the prevailing party and the losing party for purposes of awarding expert witness costs, the party seeking discovery will be referred to as "the deposing party" and the party retaining the deposed expert will be referred to as "the retaining party." In this case, Plaintiff is the deposing party, and Defendants are the retaining party.

reasonable. *Packer v. SN Servicing Corp.*, 243 F.R.D. 39, 42 (D. Conn. 2007); *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 589 (D. Colo. 2009).   Notwithstanding the moving party's showing of reasonableness, the court has an independent duty to determine what fees and expenses are reasonable and must adjust those that are deemed unreasonable.  *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 (S.D. Iowa 1992); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 356 (5th Cir. 2007).  While the court will consider the terms that the retaining party agreed to with its experts, it will not simply award fees or expenses based upon those terms.  *See Bowen v. Monahan*, 163 F.R.D. 571, 574 (D. Neb. 1995) (finding that "[w]hile [one party] may contract with any expert . . . and, by agreement, that expert may charge unusually high rates for services, the discovery process will not automatically tax such unreasonable fees" upon the other party.).

**B. Types of Fees and Expenses and Applicable Legal Standards**

**1. Deposition Time**

It is well-settled that deposition time is compensable under Rule 26(b)(4)(E) as "time spent in responding to discovery." *Fisher v. Accor Hotels, Inc.*, No. 02-8576, 2004 WL 73727, at *1 (E.D. Pa. Jan. 12, 2004).  Courts considering the reasonableness of the fees charged for deposition time examine a number of factors, including:

> (1) The expert's area of expertise;
>
> (2) the education and training that is required to provide the expert insight which is sought;
>
> (3) the prevailing rates of other comparably respected available experts;

(4) the nature, quality and complexity[2] of the discovery responses
provided;

(5) the cost of living in the particular geographic area;[3]

(6) the fee being charged to the retaining party;

(7) fees traditionally charged by the expert on related matters;

(8) any other factor likely to be of assistance to the court in balancing
the interests implicated by Rule 26.

*Jochims*, 141 F.R.D. at 495-96.   These factors provide guidance to the court to determine

reasonableness and to ensure that the deposing party "will not be unfairly burdened by excessive

ransoms which produce windfalls" for the retaining party or its experts. *Cabana v. Forcier*, 200

F.R.D. 9, 16 (D. Mass. 2001).

## 2. Preparation Time

Whether preparation time is properly reimbursable under Rule 26(b)(4)(E) as "time spent in

responding to discovery" has been the subject of much litigation.   Some courts have expressed

particular concern about the "great risk of abuse in compensating a party for his expert's deposition

preparation time, since that time usually includes much of what ultimately is trial preparation work"

for the retaining party.  *Packer*, 243 F.R.D. at 42 (internal quotations omitted).   The approach taken

---

[2] Complexity refers to whether an expert's opinions "require significant advanced study,
research, or training and experience, in the same way that would be required for a neurosurgeon,
a rocket scientist, or [an] accountant."  *Massasoit v. Carter*, 227 F.R.D. 264, 266 (M.D.N.C.
2005).

[3] This factor is not considered by all courts and is seen by some as irrelevant to whether a fee is
reasonable.  *See, e.g.*, *Jochims*, 141 F.R.D. at 496.  More recent decisions have left it out entirely,
listing and considering only the remaining seven factors.  *See, e.g.*, *Massasoit*, 227 F.R.D. at 265;
*Fiber Optic Designs*, 262 F.R.D. at 589.

4

by a slim majority of federal courts is to allow compensation of experts' preparation time. *See, e.g.*, *Borel v. Chevron U.S.A. Inc.*, 265 F.R.D. 275, 277 (E.D. La. 2010); *Waters v. City of Chicago*, 526 F. Supp. 2d 899, 900 (N.D. Ill. 2007); *Boos v. Prison Health Servs.*, 212 F.R.D. 578, 580 (D. Kan. 2002); *Rogers v. Penland*, 232 F.R.D. 581, 582 (E.D. Tex. 2005); *Lent v. Fashion Mall Partners, L.P.*, 223 F.R.D. 317, 318 (S.D.N.Y. 2004); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 331(D. Del. 2003). Yet some limitation upon the reimbursement of preparation time takes into account the need for the expenditure of such time where (1) the report, issues, or records are complex or lengthy; or (2) there has been a "considerable lapse" of time between the completion of the expert report and the deposition. *See, e.g.*, *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45, 47-48 (N.D. Ill. 1989); *Fisher v. Accor Hotels, Inc.*, No. 02-8576, 2004 WL 73727, at *2 (E.D. Pa. Jan. 12, 2004); *Boos v. Prison Health Servs.*, 212 F.R.D. 578, 579 (D. Kan. 2002); *M.T. McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491, 493 (N.D. Ill. 1997).

Guided by these authorities we accept that time spent preparing for the deposition will be compensable when it involves "time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E). *See also Boos*, 212 F.R.D. at 580 (observing that although the Rule's drafters "could have easily drafted the rule to limit recovery to the time the expert actually spent appearing at the deposition," they did not). Preparation is in both the deposing and retaining parties' interest, given the expectation that "good preparation will lead to a more efficient deposition." *Cabana*, 200 F.R.D. at 16.

While time spent preparing for depositions can and should be reimbursed, the number of hours spent preparing and the rate at which it is charged still must be reasonable. *See, e.g., Cabana*, 200 F.R.D. at 16; *Boos*, 212 F.R.D. at 580. What constitutes a reasonable amount of preparation

time varies based on the circumstances of the case, the expert, and the length of the deposition. *See, e.g.*, *Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*, 540 F. Supp. 2d 528, 539 (D. Del. 2008) (finding that nineteen hours was too much preparation time for a four-hour deposition and a nine-page report issued three weeks earlier); *Mannarino v. United States*, 218 F.R.D. 372, 376 (E.D.N.Y. 2003) (reducing preparation time from eight hours to four hours for a one-hour deposition). For example, when the amount of preparation time claimed by an expert is relatively low, a court may not require the expert to include detailed descriptions of how the time was spent as a prerequisite to reimbursement of fees. *See Boos v. Prison Health Servs.*, 212 F.R.D. 578, 580 (D. Kan. 2002) ("Although it would be helpful for an expert to provide more detailed description of his time spent preparing for the deposition, the Court will not require it in this case where the expert witness is claiming only 3.5 hours of preparation time.").

Finally, while an expert may consult with retaining counsel to prepare for a deposition, the deposing party should not be compelled to pay for this time. *See Rhee*, 126 F.R.D. at 47 (rejecting reimbursement of some preparation time as too closely related to trial preparation and focusing on consultation with counsel); *Boos*, 212 F.R.D. at 580 (allowing reimbursement but suggesting that it would have been unreasonable for the expert to request compensation for conferences with counsel).

### 3. Travel Time and Expenses

Travel time may also be compensable under Rule 26(b)(4)(E) as "time spent in responding to discovery." Generally, however, courts will place limits on compensable travel time to ensure reasonableness by reducing the rates charged by experts for it. *See Rogers*, 232 F.R.D. at 583; *Frederick v. Columbia Univ.*, 212 F.R.D. 176, 177 (S.D.N.Y. 2003). For example, the Eastern

District of New York created a rule that compensation for travel time should be half the normal rate. *Mannarino*, 218 F.R.D. at 377.

Travel expenses are also reimbursable under Rule 26(b)(4)(E). *See Feliciano v. Cnty. of Suffolk*, 246 F.R.D. 134, 137 (E.D.N.Y. 2007) ("a number of courts in the Second Circuit have held that [Rule 26(b)(4)(E)] 'permits recovery of fees for an expert's travel time along with the expert's out-of-pocket expenses.'"). In accordance with the requirement that an expert's recoverable expenses be reasonable, a deposing party is not required to pay for first class travel or luxurious accommodations. *Frederick*, 212 F.R.D. at 177. *See also* 28 U.S.C.A. § 1821 ("such a witness shall utilize a common carrier at the most economical rate reasonably available.").

## II. DISCUSSION

We first address whether compelling Plaintiff to reimburse Defendants for reasonable fees associated with the expert depositions will result in manifest injustice. Because we find that it will not, we then evaluate the reasonableness of Defendants' request. For the reasons outlined below, we recommend that Defendants' Motion be granted but only to the extent that they have shown their request to be reasonable.

### A. Compelling Payment Would Not Result in Manifest Injustice

The manifest injustice exception to the requirement that courts order reimbursement of expert fees is a stringent standard that applies in two instances: payment can be excused either if the deposing party is indigent or if requiring the payment would "create an undue hardship." *Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473 (N.D. Cal. 2006) (quoting *Reed v. Binder*, 165 F.R.D. 424, 427 (D.N.J. 1996)). In assessing whether an undue hardship would result, courts "must weigh the possible hardships imposed on the respective parties . . . [and] balance the need for doing

justice on the merits between the parties against the need for maintaining orderly and efficient procedural arrangements." *Reed*, 165 F.R.D. at 427-28.

In this case, there is no evidence that Plaintiff is indigent or otherwise cannot afford to pay for the expert depositions. To benefit from the manifest injustice exception, then, Plaintiff must show that requiring payment would create an undue hardship. Plaintiff puts forth several arguments to this effect. Each is unavailing.

Plaintiff first contends that ordering reimbursement of expert expenses would result in manifest injustice because the parties had not discussed expert fees before Defendants unfairly raised the issue post-trial. The fact that Defendants requested payment of expert fees for the first time after judgment was entered, however, does not preclude us from granting the motion. *See, e.g., Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1011 (10th Cir. 1996) (finding that the district court did not abuse its discretion in denying plaintiff's motion to compel defendant to pay travel and deposition-preparation expenses incurred by plaintiff's expert witness as untimely, where plaintiffs filed the motion more than four months after final judgment). In *Ellis*, the court emphasized that "Rule 26(b)(4)(C) itself does not specify whether or when a party must demand payment of fees to its expert." *Id. See also Rogers v. Penland*, 232 F.R.D. 581, 582 (E.D. Tex. 2005) (deciding a post-trial motion for reimbursement of expert discovery costs); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 330 (D. Del. 2003) (same). Here, Defendants filed their Motion just two weeks after final judgment was entered. We find that a two-week lapse does not make the request untimely. Further, we are unable to accept Plaintiff's argument that he lacked notice of Defendants' request for reimbursement when the Federal Rules plainly provide that notice.

Second, Plaintiff argues that he should not be required to reimburse Defendants because the reports submitted by some of the experts were deficient under the Federal Rules' disclosure requirements. Rule 26(a)(2)(B) requires that an expert provide, among other things, a list of cases in which he or she previously offered expert testimony and a statement of the compensation to be paid for his or her analysis and testimony. Plaintiff contends that an expert's noncompliance with this provision is a deficiency that renders reimbursement of that expert's fees unreasonable. We have considered this point and understand it to refer to circumstances in which Plaintiffs may have had to spend time in a deposition developing that information when it should have been included in the report. Based on our consideration of the record, together with positions developed at oral argument, we accept that there may be some impact here, but it is nominal. Accordingly, we will make a modest adjustment to the overall reimbursement calculation of one half hour for each of the three experts who failed to complete their reports in full compliance with Rule 26(a)(2)(B).[4]

Third, Plaintiff argues that he should not be required to pay for the depositions of the three experts who did not testify at trial or who did not testify in accordance with their reports. (Pl.'s Mem. at 2-3.) This argument fails, again based upon a plain reading of the Rules. Rule 26(b)(4)(E) pertains to experts "whose opinions *may* be presented at trial." Fed. R. Civ. P. 26(b)(4)(A)

---

[4] Plaintiff's Response to Defendants' Motion to Compel states the following:

> In this case, the expert reports provided by Daly, Diamond and Reinstein did not state their fee in this case, nor provide a list of all other cases in which they testified as an expert at trial or by deposition during the previous four years, as required by F.R.C.P. 26(a)(2)(B). Since the expert reports were deficient in this regard, Ndubizu should not be compelled to pay their fees for deposition.

(Pl.'s Mem. at 12.)

(emphasis added).  There is no language in the Rule limiting compensation to experts whose opinions were actually presented at trial.  Plaintiff is thus not excused from reimbursing Defendants for the fees of expert William Harris merely because he did not actually testify at trial.  *See Brown v. Butler*, 30 F. App'x 870, 876 (10th Cir. 2002) (recognizing that the choice not to call an expert witness at trial does not preclude an award of expert discovery costs).  For the same reason, Plaintiff is not excused from reimbursing Defendant for the deposition fees of Dr. Alan Reinstein merely because his trial testimony was "much more limited" than the opinions in his report.  (Pl.'s Mem. at 2.)  The same proposition applies to George Daly, who apparently provided only "foundational" testimony at trial.  (Trial Tr. 113:9-124:5, Mar. 31, 2011.)  The fact that this limitation occurred or that it resulted from a limine ruling of Judge Brody has no bearing on the reimbursement question presented here.  (*Id.*)[5]  Like with Dr. Reinstein and Mr. Harris, the scope of Dean Daly's testimony at trial does not dictate our analysis.

---

[5] For the proposition that "[w]hen addressing requests for reimbursement of expert's deposition fees, courts analyze the expert's report in comparison with the expert's trial testimony," Plaintiff relies on a case from the Eastern District of Texas.  *Rogers v. Fenland*, 232 F.R.D. 581, 582 (E.D. Tex., 2005).  In *Rogers*, the Defendant retained four experts, all of whom the Plaintiffs deposed.  *Id.*  However, at trial, the Defendant did not call any of the experts to testify or introduce any of their deposition testimony.  *Id.*  Additionally, one of the experts was precluded from testifying at trial because he did not survive a *Daubert* challenge, as the court deemed his testimony unreliable under Fed. R. Evid. 702.  *Id.* at 583.  Ultimately the court determined that "[t]o require a party to pay for the costs of a witness who was not even called, and against whom the court had sustained a *Daubert* challenge is manifestly unjust."  *Id.*  Here, however, Daly was not prevented from testifying because the opinions in his report were unfounded—he was precluded from testifying because he attempted to offer an opinion beyond the scope of his report.  What is relevant is not the trial strategy, but instead the substance of the report on which he was deposed.  That substance passed muster under 26(b)(4)(A) and thus Plaintiff's deposition of Daly with regard to it is the proper subject of compensation.

In sum, Plaintiff has not shown that compelling payment for experts would result in manifest injustice.  Plaintiff is neither indigent nor insolvent, and no undue hardship would be created by the timing of Defendants' request, the contents of the expert reports, or any experts' limited trial testimony.

As there is no manifest injustice in compelling reimbursement, we next must determine a reasonable amount to compel.  Defendants' Motion to Compel includes requests for reimbursement of all four experts' deposition time, preparation time, and travel time and expenses.  Each of these is reimbursable to some extent.

**B. Reasonable Compensation For Defendants' Experts**

At the outset it should be noted that, while Defendants bear the burden of establishing that the requested expenses and fees are reasonable, their Motion does not address reasonableness in any substantial way.  Instead, Defendants merely assert that the "fees charged by [Diamond, Harris, Reinstein, and Daly], as well as the amount of time spent by each of them to prepare for their depositions, are fair and reasonable, and consistent with their exceptional qualifications."  (Defs.' Mem. at 7.)  Defendants do not, for example, provide affidavits or other documentation to support these contentions.  We acknowledge that Defendants have submitted copies of invoices attesting to the amounts the experts billed and Drexel paid.  (Defs.' Mem. Exs. B, C, D, E.)  Certainly the fact that these amounts were charged to Drexel and that Drexel paid them says something about their reasonableness.  However, it does not say enough.  Courts evaluating the reasonableness of an expert fee without a strong showing from the retaining party have found that this lack of information "militates in favor of a reduced fee award."  *Feliciano v. Cnty. of Suffolk*, 246 F.R.D. 134, 137 (E.D.N.Y. 2007).  *See also Preseault v. United States*, 52 Fed. Cl. 667, 678 (2002) (reducing the

11

amount plaintiffs sought in reimbursement for expert fees because they "provided no evidence that [the] rate [was] reasonable.").

We now consider the particulars with respect to each expert, noting that collectively Defendants seek reimbursement in the amount of $46,043.34. For the reasons set out below, we will recommend a significantly reduced sum.

### 1. Dr. Michael Diamond

Dr. Michael Diamond was retained by Defendants to evaluate Plaintiff's academic record relative to those of other candidates. Dr. Diamond is currently a professor of accounting and the Executive Director of an international study program at the University of Southern California, where he has previously served as Vice President, Executive Vice Provost, and Dean of the School of Accounting. (Pl.'s Mem. Ex. B.) He has impressive credentials, including two post-graduate degrees, forty years of teaching and educational administration experience, and numerous awards, publications, and committee memberships. (*Id.*) Dr. Diamond's report is dated March 29, 2010, and Plaintiff deposed him on June 16, 2010, less than three months later. (Pl.'s Mem. Ex. C.) Defendants seek reimbursement of Dr. Diamond's time spent preparing for and participating in the deposition, together with his travel time and expenses, for which Dr. Diamond charged a total of $18,506.51. (Defs.' Mem. Ex. B.)

Dr. Diamond's invoice sets out his billing at the same hourly rate for both testimony and preparation. (Defs.' Mem. Ex. B) We accept, as Defendants' counsel did at oral argument, that it is appropriate to bill at the same rate for testimony and preparation. We note, however, that beyond the evidence of what Drexel paid its experts, Defendants have not provided us with affidavits or other evidence pertaining to the reasonableness of Dr. Diamond's $350 rate. The record does not

include anything about the rates of comparable experts or fees charged by Dr. Diamond on similar

matters.  Although his qualifications may be impressive and his experience and its relevance to the

opinions expressed in his report weigh in favor of a substantial fee, we do not find that the opinions

expressed are particularly technical.  Further, we conclude that the failure of Defendants to provide

information pertaining to Dr. Diamond's customary fee for similar matters or the rates of comparable

experts weighs in favor of a reduction.  *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 (S.D.

Iowa 1992).  Accordingly, and based upon our experience with academic experts testifying in their

professional capacity, our consideration of the rates charged by these experts, and a review of the

relevant case law, we recommend a reduction of Dr. Diamond's rate for reimbursement to $300 per

hour for both testimony and preparation time.

Dr. Diamond charged Defendants for nine hours of deposition testimony, (Defs.' Mem. Ex.

B) but his deposition transcript does not reflect the end time for the deposition.  (Pl.s' Mem. Ex. C.)

In responding to Defendants' Motion, Plaintiff's counsel attached a declaration generally averring

that he "did not recall the deposition lasting anywhere near that long or going into the evening."

(Pl.'s Mem. Ex. A (Culp. Decl. May 15, 2011).)  The deposition transcript is only 219 pages long,

(Pl.'s Mem. Ex. C) and it is thus unlikely that the deposition lasted as long as nine hours.  Without

proof of the length of the deposition, we recommend allowing recovery for the seven hours provided

for in the Federal Rules.  *See* Fed. R. Civ. P. 30(d)(1).  At an hourly rate of $300, the total

recoverable amount would be $2100.  From this amount, we recommend subtracting the value of one

half hour of deposition time to compensate for the fact that Plaintiff had to take time to develop

information that should have been disclosed in Dr. Diamond's report pursuant to Rule 26(a)(2)(B).

13

At $300 per hour, this amounts to a deduction of $150.   In other words, the reimbursement amount would have been $2,100, but is reduced to $1,950.

Dr. Diamond billed Defendants for thirty hours of preparation time.  Five of these hours were spent consulting with Defendants' counsel, but the remaining twenty-five lack description.  (Defs.' Mem. Ex. B.)  We are unwilling to recommend that Defendants be reimbursed for the five hours Dr. Diamond spent with Defendants' counsel, as we will not impose upon Plaintiff the risk of compelling him to pay for Defendants' trial preparation.  As to the remaining twenty-five hours, Defendants have given us no information regarding how this time was spent.  We are left with several open questions, including what if any portion of the time included travel given the expert's employment in Southern California.  We are satisfied however, that there would be a need for preparation, at least some of which may have occurred during travel, and we accept that some of this preparation time should be reimbursed.  Dr. Diamond participated in a seven hour deposition, but it took place less than three months after the completion of his expert report, which was only six pages long exclusive of appendices.  (Pl.'s Mem. Ex. B.)  Further, the report is not especially complex, and given its length, together with the lack of delay between the report and the deposition, we assume that Dr. Diamond was likely able to recall much of it.  Under the circumstances, we recommend reimbursement of eight hours of Dr. Diamond's preparation time, at $300 per hour for a total of $2,400.

We will also recommend reimbursement of some of Dr. Diamond's travel and lodging expenses.  He has provided receipts totaling $3,237.10 in airfare, $1,340.69 in lodging and meals, and $81.42 in parking and local transportation expenses.  (Defs.' Mem. Ex. B.) Defendants should not be reimbursed $1,258.70 for the return plane ticket to Los Angeles that Dr. Diamond could not

use, where he notes on the invoice that the ticket was "not refundable but is reusable and will be used for Drexel in the fall for travel to trial." *Id.* Defendants' counsel conceded during oral argument that the reimbursement of this item of expense would not be reasonable. Nor should Plaintiff be required to pay for Diamond's first class tickets or fully reimburse Defendants for Dr. Diamond's particularly expensive lodging in Washington. *See Frederick*, 212 F.R.D. at 177. Instead of the $1,340.69 in lodging and meals, we recommend reimbursing half of that, or $670.35. As a result, Dr. Diamond's total recoverable travel, lodging, and local transportation expenses amount to $2,730.17.

Dr. Diamond has also billed Defendants for $197.30 incurred in responding to a request for documents made by Plaintiff before the deposition. (Defs.' Mem. Ex. B.) It is unclear whether these documents were beyond the scope of those considered by Dr. Diamond for his report or if they were considered by him and thus were required to be produced anyway under Rule 26(a)(2)(B). Because the Rule requires the retaining party to produce these documents, the deposing party should not have to pay the expert for collecting these documents. *See Packer*, 243 F.R.D. at 43. We also do not have sufficient information to determine whether Dr. Diamond's expenses in obtaining and producing these documents should be passed on to Plaintiff and therefore recommend excluding them from Dr. Diamond's total reimbursable fees and expenses. We conclude that the reasonable cost to be reimbursed by Plaintiff to Defendants is $7,080.17 for Dr. Diamond's fees and expenses—$1,950 for deposition time, $2400 for preparation time, and $2,730.17 for reimbursable expenses.

### 2. William Harris

William Harris was retained by Defendants to evaluate Plaintiff's damages. Mr. Harris is an Accredited Valuations Analyst and the Managing Director of ForensicDamages LLC, a

consultancy that provides economic and accounting analysis in disputes and investigations. (Pl.'s Mem. Ex. D.) His report is dated March 29, 2010 and Plaintiff deposed Mr. Harris on November 12, 2010, more than seven months later. (Pl.'s Mem. Ex. E.) Defendants seek reimbursement in the amount of $3,505. (Defs.' Mem. Ex. C.) Mr. Harris uses a different fee arrangement than the other experts, in that he billed Defendants for preparation at an hourly rate of $335 and charged a flat fee of $2,500 for his deposition testimony. *Id.*

We are unwilling to recommend that the flat fee arrangement between Mr. Harris and Defendants be reimbursed by Plaintiff on the same terms. Neither Mr. Harris himself nor Defendants have submitted any information explaining the basis for such a fee or supporting its reasonableness. While Mr. Harris has testified in a number of cases in both state and federal courts across the country, (Pl.'s Mem. Ex. D) Defendants have not provided any information pertaining to his fee arrangements in any of these other cases, nor is there any indication that his fee here is comparable to that of other similarly qualified and respected experts. We accept that Mr. Harris is a widely published and consulted accountant, works in a rather technical field requiring special training and experience, and that his extensive credentials were relevant to his opinions in this case. We note, however, that flat fees are generally disfavored and subject to closer scrutiny, as courts "expect some reasonable relationship between the services rendered and the remuneration to which an expert is entitled." *Mannarino v. United States*, 218 F.R.D. 372, 375 (E.D.N.Y. 2003) (internal quotations omitted). Mr. Harris' qualifications justify a substantive rate which we will recommend, as we did with respect to Dr. Diamond, to be $300 per hour. We further recommend that the same rate be reimbursed for both Mr. Harris's deposition testimony and preparation.

The excerpts of the transcript provided by Plaintiff show that Mr. Harris's deposition lasted six hours and twenty minutes.  (Pl.'s Mem. Ex. E.)  Six hours and twenty minutes at $300 per hour results in a total of $1900.  Mr. Harris also billed Defendants for three hours of preparation time.  (Defs.' Mem. Ex. C.)  This is reasonable, as the deposition lasted more than six hours, involved rather complicated economic and accounting analysis, and took place more than seven months after the production of Harris' report.  At the hourly preparation rate of $300, this totals $900.  Mr. Harris did not bill Defendants for travel or out-of-pocket expenses.  We recommend that Plaintiff be ordered to pay Defendants a total of $2,800 for Mr. Harris's expenses—$1,900 for deposition time and $900 for preparation time.

### 3. Dr. Alan Reinstein

Dr. Alan Reinstein was retained by Defendants to evaluate Plaintiff's qualifications relative to other candidates and to discuss journal rankings.  Like Defendants' other experts, Dr. Reinstein has impressive credentials and extensive experience in accounting and education; he currently serves as an endowed professor of accounting at Wayne State University, has published a number of articles in accounting journals and is involved in numerous professional organizations.  (Pl.'s Mem. Ex. F.)  Dr. Reinstein's report is dated March 29, 2010 and Plaintiff deposed him on December 2, 2010, approximately eight months later.  (Pl.'s Mem. Ex. G.)  He submitted invoices and receipts listing several expenses for which Defendants seek reimbursement—deposition time, preparation time, travel time, travel expenses, and miscellaneous expenses—totaling $10,110.83.  (*Id.*)

We first assess the reasonableness of Dr. Reinstein's rates.  Dr. Reinstein billed Drexel for $500 per hour for testimony time and $250 per hour for "research time," which included preparation, meetings with counsel, and travel time.  (Defs.' Mem. Ex. D.)  During oral argument held on

17

October 13, 2011, counsel for Defendants stated that he would not press the increased fee for testimony versus preparation time, and that Plaintiffs should not have to incur the additional cost. Therefore, we recommend reimbursement at $250 per hour for both testimony and preparation. Even though Dr. Reinstein billed for 7.5 hours of deposition testimony, (Defs.' Mem. Ex. D), the deposition actually lasted only six hours and thirty-eight minutes. (Pl.'s Mem. Ex. G.) We recommend reimbursing seven hours, or $1,750, less $125, the value of one half hour of deposition time, to compensate for the fact that Plaintiff had to take time to develop information that should have been disclosed in his report pursuant to Rule 26(a)(2)(B). In other words, we recommend reimbursing $1625 for deposition time.

Defendants also seek reimbursement of Dr. Reinstein's preparation time. He reports that he spent 5.25 hours reviewing documents, one hour meeting with counsel, and nine hours traveling. (Defs.' Mem. Ex. D.) He spent an additional 4.5 hours reviewing files, conferring with counsel, and sending counsel files, plus an additional 4.25 hours conferring with counsel and traveling within Philadelphia. (Defs.' Mem. Ex. D.) We will not recommend reimbursing Defendants for Dr. Reinstein's time spent conferring with counsel, but we also will recommend that Defendants be reimbursed for one half of his travel time, as he billed to Drexel.[6] (Defs.' Mem. Ex. D.) Four and a half hours at $250 per hour adds up to $1,125 for travel time.

The time Dr. Reinstein actually spent preparing for the deposition is not specifically set out. From his total of 14.25 hours submitted to us (4.5 of which represented time conferring with counsel), we are prepared to recommend seven hours of preparation time for reimbursement. We

---

[6] Dr. Reinstein's invoice reveals that he charged Drexel "@ 50% of time spent" for his "commute time." (Defs.' Mem. Ex. D.)

take into account that while there was a lengthy delay between his report and his deposition, his report is not especially complex and is only nine pages long, including exhibits.  For a seven-hour deposition, we conclude that seven hours is reasonable.  At $250 per hour, this totals $1,750.

Dr. Reinstein lists a number of travel and miscellaneous expenses on his invoice, totaling $1,485.83.  (Defs.' Mem. Ex. D.)  The $50 fee incurred for changing his flight should not be reimbursed, as the Court does not know the reason for the change and thus cannot evaluate the reasonableness of this charge.   All other travel expenses are reasonable.   Dr. Reinstein's reimbursable expenses total $1,435.83.  We therefore recommend that Plaintiff be ordered to reimburse Defendants in the amount of $5,935.83  for Dr. Reinstein's fees and expenses —$1,625 for deposition time, $1,750 for preparation time, $1,125 for travel time and $1435.83 for reimbursable expenses.

### 4. George Daly

Defendants retained George Daly to testify about journal rankings and to evaluate professors' qualifications.   Mr. Daly is the Dean of the McDonough School of Business at Georgetown University, has advanced degrees in economics and more than forty years of teaching experience at various universities.  (Pl.'s Mem. Ex. H.)  His report is dated March 29, 2010, and he was deposed more than seven months later on November 19, 2010.  (Pl.'s Mem. Ex. I.)  Mr. Daly submitted an invoice listing fees and travel expenses totaling $13,921.  (Defs.' Mem. Ex. E.)

Mr. Daly used a single hourly rate of $500 for all undertakings.  (*Id*.)  Again, Defendants have not submitted any information about comparably credentialed and respected experts from which the Court might draw a comparison.  As a result, Mr. Daly's fee should not be fully reimbursed.  We again recommend a reasonable rate for Mr. Daly's testimony and preparation to be $300 per hour.

19

The transcript shows that Mr. Daly's deposition lasted 5.5 hours.  (Pl.'s Mem. Ex. I.)  Defendants should be reimbursed for this time at the adjusted hourly rate of $300 for a total of $1,650, minus the value of one half hour to compensate for the fact that Plaintiff had to take time to develop information that have been disclosed in his report pursuant to Rule 26(a)(2)(B).  At $300 per hour, this amounts to a deduction of $150.  In other words, the reimbursement amount would have been $1,650, but is reduced to $1,500.

Mr. Daly's reimbursable preparation time is not so easily determined.  His invoice provides next to no detail with respect to the time he spent working on this matter, and no descriptions of his activity.  He lists only the dates he worked and the corresponding amounts of time, which total 27 hours.  (Defs.' Mem. Ex. E.)  Because he spent 5.5 of those hours testifying, we need only address the remaining 21.5 hours.  Mr. Daly did not bill Defendants separately for travel time or for consulting with Defendants' counsel, so we accept that the 21.5 hours reflects a combination of all of these aspects of his involvement.   While federal courts have not consistently required experts to include detailed descriptions of their time as a prerequisite to reimbursement of their fees in cases where the amount of preparation time claimed by the expert is relatively low, *see Boos v. Prison Health Servs.*, 212 F.R.D. 578, 580 (D. Kan. 2002), Daly invoiced Defendants for over twenty hours, with few details or insight into the work it represents.  Mr. Daly's report is only four pages long and not particularly complex, so we would not expect that excessive time would be required to prepare for the deposition.  At the same time, Plaintiff is required to reimburse the retaining party for a reasonable span of "time responding to discovery." Fed. R. Civ. P. 26(b)(4)(E).  We assess this time to be four hours, which at $300 per hour totals $1,200.

Mr. Daly also lists $421 in travel expenses—train tickets between Washington, D.C. and Philadelphia and cab fare to and from the train stations.  These travel expenses are reasonable, and we recommend that Plaintiff reimburse Defendants for these costs.  We recommend that Plaintiff be ordered to reimburse Defendants $3,121 for Mr. Daly's fees and expenses—$1,500 for deposition time, $1,200 for preparation time, and $421 for reimbursable expenses.

## III. CONCLUSION

For the reasons stated above, we recommend that Plaintiff be ordered to reimburse Defendants in the following amounts:

$7,080.17 for Dr. Michael Diamond;

$2,800 for William Harris;

$5,935.83 for Dr. Alan Reinstein; and

$3,121 for George Daly.

In total, we recommend that Defendants be reimbursed $18,937 for the cost of expert discovery.

BY THE COURT:


_____David R. Strawbridge USMJ_____
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

21